William E. GILES, Appellant,

v.

STATE of Missouri, Respondent.

No. 37980.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Dec. 27, 1977.

Motion for Rehearing and/or Transfer
Denied Feb. 14, 1978.

---

Richard B. Scherer, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Walter O. Theiss, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., Clayton, for respondent.

MARSHALL CRAIG, Special Judge.

The appellant was the movant in a proceeding seeking to vacate and set aside his sentence, which remedy he sought under Supreme Court Rule 27.26.

The trial court, without an evidentiary hearing, denied the movant's motion and entered its order on March 5, 1976.

On April 10, 1975, movant entered a plea of guilty to the charge of second degree murder. The plea was accepted by the court after lengthy questioning by the court in which the movant and the attorneys participated. The movant was sentenced to fifteen years in the custody of the Department of Corrections of the State of Missouri. Movant was given full credit for time spent in jail prior to sentence.

The movant had been originally charged with first degree murder and the trial of the movant was in its third day and the State had completed its case and the defendant had put on one witness and indicated that he was going to put on one more witness. The defendant had originally entered a plea of not guilty by reason of mental disease or defect. At this point the court was informed that the movant desired to change his plea. The State requested and was granted leave to amend the indictment by way of information, by deleting the word "deliberately." The movant requested that the charge be reduced to manslaughter, but the State declined and recommended fifteen years on the amended charge of second degree murder. After the court fully and completely informed the movant of the reduced charge, of his rights and the consequences, the movant entered his plea of guilty to the charge of second degree murder and was duly sentenced. Movant's counsel did not recommend that movant accept the State's offer.

The determining issue on this appeal is whether or not the trial court erred in denying movant's motion without an evidentiary hearing. We conclude that the court did not err.

The trial court found that the plea was entered by the movant of his own free will, without coercion and with counsel present and advising him. The case was in trial and the movant had the advantage of the State's evidence and the court explained to him that by entering his plea of guilty he relinquished his right to a trial by jury and his right to all defense. The trial court correctly concluded that the transcript at the time the plea was taken, together with the allegations contained in the movant's motion, clearly indicated that he was not entitled to the relief he sought by his motion.

Movant's first contention is that the trial court erred in overruling his Rule 27.26 motion without an evidentiary hearing because the transcript of the plea of guilty conclusively shows that movant did not understand the nature of the charge to which he plead guilty; consequently the subsequent plea of guilty was not intelligently, knowingly and voluntarily made.

■ The test as to whether or not a plea was voluntarily and intelligently made, is set forth in *Baker v. State*, 524 S.W.2d 144 (Mo.App.1975), wherein it is stated: "The test is not a particular ritual or whether each and every detail is explained to a defendant but whether in fact the plea is voluntarily and intelligently made. *Flood v. State*, 476 S.W.2d 529, 534 (Mo.1972)." *Baker*, 524 S.W.2d at 147. *See also, Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), and *Smith v. State*, 513 S.W.2d 407 (Mo. banc 1974), *cert.*

*denied,* 420 U.S. 911, 95 S.Ct. 832, 42 L.Ed.2d 841 (1975).

■ In reviewing the record of this guilty plea, the key issue is whether or not movant, by his answers to questions propounded by the court, the prosecution, and his own counsel, expressed an awareness of the nature and the elements of the charge to which he plead guilty. Movant's understanding of the nature and the elements of the charge is exhibited by the following excerpts from the trial court's hearing before accepting the plea of guilty:

"THE COURT: You read it back to me, what you understand the deal or plea negotiations to be. You read it back to me.

THE DEFENDANT: To me, I don't understand I am not guilty, about not guilty by reason of. I feel if I went to the penitentiary and were to relapse they would send me to Fulton State Hospital for correctional treatment. On the case itself it was a profound shooting, I didn't intent [sic] to kill the man. I feel it is strictly a Manslaughter case. I wanted the case to proceed on the Manslaughter level because I feel I would not have anything by that. If I ask for a re-trial it would be brought up again, now, so I will accept it, be put in the penitentiary.

MISS FISER: Are you saying because the charge is Murder Second and it is fifteen years you would rather take that fifteen years than continue with the trial?

THE COURT: Do you understand the plea negotiations are at fifteen years and that is what I am going to sentence you to?

THE DEFENDANT: Yes."

\*    \*    \*    \*    \*    \*

"THE COURT: Have you and Miss Fiser had any arguments about this case?

THE DEFENDANT: Just that I am not guilty, about not guilty by reason of mental disease or defect.

THE COURT: You do not want to plead guilty under that?

THE DEFENDANT: No, Sir.

THE COURT: Do you think Miss Fiser sold your case down the river, lied to you in any way or did not do a good job in any way?

THE DEFENDANT: I am dis-satisfied. I feel I am guilty of Manslaughter and I am pleading guilty to Murder Second."

\*    \*    \*    \*    \*    \*

"THE COURT: . . .

Mr. Giles, just tell me. Tell me what you remember you did that day.

THE DEFENDANT: All right. I was crossing Ashby Road and at this time happened by a yellow Nova, and the man speeded up and it became apparent he was going to strike me with his automobile, so I began crossing the street quicker than he had been. When I got past it, the white line, the man swerved over towards me, whereupon I waved my rifle and pointed it in his direction. He just barely missed me. He went down Ashby Road and I walked further down the street, and the man pulled up and he was at an angle, such as this, and he called me a (ex. del.) and called me some other things in a real loud voice, and he brought his hand up like this. I raised the rifle and fired. I did not fire at vital organs such as the head or heart or spine, I just intended to protect myself."

\*    \*    \*    \*    \*    \*

The statements by movant that he didn't "inten(d) to kill the man," and "I did not fire at vital organs, such as the head or heart or spine," coupled with his opinion that the case was "strictly a manslaughter case," indicated that movant was aware of the contents of the information and that he had some familiarity with the elements of the charge. Movant indicated that even though he would plead guilty to the charge of second degree murder he would rather have pled guilty to manslaughter because he didn't "inten(d) to kill the man."

Movant urges that the instant case is "remarkably akin" to the recent case of *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). The instant

case, however, is distinguishable from *Henderson* on its facts.

In *Henderson* there was no voluntary admission or finding by the court after the trial that the defendant had the requisite intent to commit the crime to which he pled guilty. The defense counsel did not stipulate to that fact and no one explained to the defendant that his plea of guilty would be an admission of the requisite intent; nor did the defendant make any factual statement or admission which could imply that he had such an intent.

In the case at bar, movant admitted raising a rifle and firing it at another human being, this action necessarily implies the element of intent. Where the defendant admits facts, which are sufficient to constitute the offense to which he is pleading guilty, the movant may not later attack the plea of guilty by alleging he did not understand the nature of the charge. *Fisk v. State*, 515 S.W.2d 865, 868[4] (Mo.App. 1974), and cases cited therein.

If we view movant's statement, "I didn't inten(d) to kill the man" as a proclamation by movant of his innocence; in the light of movant's desire to enter a plea of guilty after he was told that the charge would not be further reduced to manslaughter; this case is more properly considered as coming within the ambit of *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In the *Alford* case, the defendant took the stand and testified that he had not committed the murder, however, he still desired to plead guilty to avoid a possible death sentence and to limit the penalty to the 30 year maximum provided for second degree murder. Thereupon, with the State's incriminating evidence and Alford's denial before it, the trial court proceeded to accept the guilty plea, and sentence Alford for second degree murder. In the *Alford* opinion, the court reasoned:

"Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Alford*, 400 U.S. at 37, 97 S.Ct. at 167.

Movant was aware that if the case was submitted to the jury, and he was found guilty of first or second degree murder, the range of punishment would be 10 years to life imprisonment. Movant clearly stated that he did not want a verdict of not guilty by reason of mental defect. Movant made a "voluntary and intelligent choice among the alternative courses of action open (to him)." *Alford*, 400 U.S. at 31, 91 S.Ct. at 164.

For a movant to be entitled to an evidentiary hearing on a motion to vacate sentence and judgment, the motion must allege facts warranting relief and such facts must raise matters not refuted by the files and records and must have resulted in prejudice to the movant. *Haliburton v. State*, 546 S.W.2d 771 (Mo.App.1977). The movant in this case fully comprehended the proceedings. *Vogel v. State*, 541 S.W.2d 87 (Mo.App.1976).

In the case of *Fisk v. State*, 515 S.W.2d 865 (Mo.App.1974) the movant contended, among other things, that he did not understand the technical elements of the charge of murder in the second degree. The court there found that the transcript of the plea reflected that he did understand the elements of the crime. The court there further held that the rules do not require that the court in accepting a plea, explain each element of the offense, but that it was sufficient if the accused understood the "nature of the charge."

The required legal elements of murder in the second degree may be presumed from the intentional killing of another with a deadly weapon. *State v. Williams*, 442 S.W.2d 61 (Mo. banc 1968); *State v. Sherill*, 496 S.W.2d 321 (Mo.App.1973).

We hold that the trial court's determination that the guilty plea was voluntari-

ly made was not clearly erroneous; and that the transcript of the proceedings conclusively shows that movant is entitled to no relief on this point, under Rule 27.26.

In his final point relied on movant contends that the trial court erred in overruling movant's motion to vacate and set aside the judgment under Rule 27.26 in that he was denied effective assistance of counsel and that he was not mentally competent to stand trial or to plead guilty. Movant's contention that he was not adequately represented is refuted by the record:

"MISS FISER: [C]orrect me if I am wrong, that I lied to you about that, but hearing that five year rule yesterday, he (Giles) felt that he would not desire to be in the mental hospital if the possibility was he could be there that long and, consequently he is not satisfied. If there is something, he can explain to the court.

THE COURT: Do you have any other arguments, Mr. Giles?

THE DEFENDANT: No, Sir.

THE COURT: I have been living with this case for quite awhile. Do you feel you have had adequate defense and have been properly represented?

THE DEFENDANT: Yes, Sir."

The law is well-settled in this State that once a guilty plea has been entered, the determination of the adequacy of representation is limited to a determination of the extent of counsel's incompetence, if any, bears on the issues of voluntariness and understanding. *Barylski v. State*, 473 S.W.2d 399, 402 (Mo.1971); *Baker v. State*, 524 S.W.2d 144, 148 (Mo.App.1975). The issues of voluntariness of the plea and understanding of the nature of the charge have been adequately covered under the discussion set out above. In addition, movant has not alleged any new facts that go beyond or are outside the scope of the inquiry made by the trial judge during the course of the plea. The trial court committed no error in overruling movant's motion in this regard. *Smith*, 513 S.W.2d at 411.

In regard to movant's contention that he was not mentally competent, the trial court made an extensive inquiry and specific findings. Part of the inquiry consisted of the report of Doctor Shobhana D. Mehta, M.D., of the St. Louis State Hospital, which was read into evidence. The conclusions stated that the patient: (1) does not suffer from a mental illness as defined by the Missouri Statutes; (2) has a personality disorder of mixed type anti-social and paranoid; (3) is aware of the charges against him. He is also aware of the name of his defense attorney, and he is able to cooperate in his own defense; (4) patient's account of the incident does not lead me to believe that he was disturbed in any way.

After Doctor Mehta's report was read into the record the following colloquy transpired:

"MR. WESTFALL (Circuit Attorney): [B]oth Doctor Shuman and the staff at the Fulton State Hospital have informed the Court and testified in their opinion Mr. Giles at present is competent to stand trial.

MISS FISER: We will so agree.

THE COURT: You heard the testimony, Mr. Giles?

THE DEFENDANT: Yes."

The trial court followed immediately with its finding: "The court would find, based upon the evidence before me, that he is competent to stand trial, competent to cooperate with counsel, competent to give judgment to the trial or plead guilty." The evidence of record clearly refutes movant's position.

Movant has failed to show that the allegations of his motion are not refuted by the facts elicited at his guilty plea hearing. *Smith*, 513 S.W.2d at 411.

The judgment of the trial court is affirmed.

WEIER, CLEMENS and STEWART, JJ., and RONALD M. BELT, Special Judge, concur.