UNITED STATES of America ex rel. Charles A. BONNER, Petitioner,

v.

Donald WYRICK, Warden, Missouri State Penitentiary, Respondent.

No. 76–499C(2).

United States District Court, E. D. Missouri, E. D.

Dec. 22, 1976.

Charles A. Bonner, pro se, for petitioner.

Timothy J. Verhagen, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM

REGAN, District Judge.

Petitioner Charles A. Bonner, a Missouri state prisoner, commenced this action *in forma pauperis* challenging his state imprisonment under 28 U.S.C. § 2254. Petitioner, together with Horace Bonner and Kevin Dean, pleaded guilty in the Circuit Court of the City of St. Louis on October 9, 1973 to two counts of murder, one count of rape, and one count of assault with intent to kill with malice. Petitioner was sentenced therefor to three concurrent terms of thirty five years imprisonment, and one term of five years imprisonment consecutive to the other terms.

In this action petitioner makes the following claims[1] in support of his allegation

that his imprisonment violates the Constitution of the United States: (1) Petitioner's guilty plea was not voluntary, was not made with an understanding of the nature of the charges against him, and was equivocal in that it did not contain a factual basis for the charges. (2) Petitioner's guilty plea was not made voluntarily because it was induced by fraud or mistake, by misapprehension, fear, persuasion, or the holding out of hopes which prove to be false or ill founded. (3) Petitioner's guilty plea was not made voluntarily with an understanding of the nature of the charges because of ineffective assistance of counsel. (4) Petitioner's guilty plea was not made voluntarily because at the time of the plea the alternative of a jury trial was unlawfully "chilled."

It is axiomatic that before these claims may be presented in a federal habeas action petitioner must have exhausted his available remedies in the Missouri state courts with respect to these claims. 28 U.S.C. § 2254(b). On October 25, 1973 petitioner filed a motion to set aside the judgment and sentence pursuant to Missouri Supreme Court Rule 27.26. A hearing was held on petitioner's motion, along with similar motions filed by co-defendants Dean and Horace Bonner, on April 12, 1974. On April 30, 1974 the motion was denied. The denial was affirmed on appeal. *Bonner v. State of Missouri*, 535 S.W.2d 297 (Mo.App.S.L.1976). An application for a transfer was denied by the Supreme Court of Missouri on May 5, 1976. Respondent admits that petitioner has exhausted his available state remedies with regard to the first three of petitioner's claims. Respondent asserts, however, that Claim No. 4 was never properly presented to the Missouri courts for ruling.

### Claim No. 1

Petitioner alleges that at the guilty plea hearing he did not understand the nature of the charges against him. By grand jury indictment filed January 25, 1973 Kev-

1. These claims are identical to those made in this Court in other habeas actions by Horace Bonner, No. 76–420 C (3), and by Kevin Dean,

*U. S. ex rel. Dean v. Wyrick,* 426 F.Supp. 1195 (1976). Habeas relief was denied in both actions.

in Dean, petitioner and Horace Bonner were charged with the first degree murders of Leon Rush (Count 1) and Mario Sims (Count 2), felonious assault upon Stephanie Sims (Count 3), and the forcible rape of Stephanie Sims (Count 4).

The state court records filed by respondent herein indicate that on October 9, 1973 petitioner pleaded guilty to Counts 1 and 2, as reduced to second degree murder, and to Counts 3 and 4 as originally filed. The record of the plea hearing indicates that, in answer to the questions posed to the petitioner by the Court, the Honorable Lackland H. Bloom, petitioner stated that he had conferred with his attorney, Murry Marks, with respect to the facts and with respect to the charges. He stated that he had completed the eleventh grade in high school, and that he can read and write (Resp. Exh. A, 17). At the request of the Court the state prosecutor recounted at length the factual circumstances of each of the four counts (Resp. Exh. A, 19–21). Petitioner admitted to the Court that he participated in the assault upon Rush and upon Mario Sims, that he hit them both with a cane (Resp. Exh. A, 22). He admitted that he shot and wounded Stephanie Sims (Resp. Exh. A, 22). And he admitted that he had sexual intercourse with her against her will (Resp. Exh. A, 23).

The state court record is totally devoid of any indication that petitioner did not know the charges against him. Petitioner testified in the Rule 27.26 hearing that he took five Valium pills to calm his nerves before the plea hearing and that they made him drowsy, "somewhat intoxicated" (Resp. Exh. A, 310, 333). Nevertheless, petitioner testified that he had the ability to understand what was being said during the plea proceeding (Resp. Exh. A, 333). This fact is corroborated by his extensive recollection during the Rule 27.26 hearing of the circumstances of his plea.

The Rule 27.26 hearing court found that petitioner knew the consequences of his plea and the nature of the charges against him (Resp. Exh. A, 523). The Missouri Court of Appeals ruled this point against petitioner stating as follows:

It is obvious that in ruling this issue against movant the trial court gave no credence to movant's testimony. Even when the movant's testimony is the only evidence before the court the court is not bound to accept it as true. [Cite omitted]. In this case the court had reason to reject this testimony. His testimony on this issue when viewed carefully, lacks conviction. His version of the events and conversations had on the day he entered the plea were most lucid and detailed. On cross-examination Charles Bonner testified that he understood, from his conversation with his attorney that he would probably get 35 years and 5 years consecutive on the last count. The following then occurred:

"Q: (By Mr. Moss) Well, it [valium] didn't effect your understanding in regard to pleading guilty, did it?

A: Not to where I really, actually, you know, couldn't hear what he was saying or understand the words he was saying or what he was saying, not to the extent I would have been too asleep or drunk.

Q: And you were neither of those?

A: I said I was somewhat intoxicated; I didn't say I was drunk.

Q: But you understood what he. was telling you?

A: Yes, I did."

None of the persons with whom he had associated on that day, including his mother, testified that he appeared to be drowsy or intoxicated or functionally impaired in any manner. Judge Bloom accepted the plea. He saw nothing about movant to cause him to feel that movant was not in full control of his faculties. We cannot say that the finding of the court was clearly erroneous on this issue.

*Bonner, supra,* at 298–299.

The state court records sufficiently indicate that petitioner's guilty plea was voluntary and was made with an understanding of the charges to which he was pleading guilty. Petitioner personally indicated and

affirmed the existence of a factual basis for his guilty pleas. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

### Claim No. 2

■ In his second claim for relief petitioner alleges that his guilty plea "was induced by fraud or mistake, by misapprehension, fear, persuasion or the holding out of hopes which prove to be false or ill founded." When the trial court accepted petitioner's guilty plea, it found the plea to have been voluntarily given (Resp. Exh. A, 24). During the Rule 27.26 hearing petitioner claimed that his attorney promised that he would be imprisoned for only seven years if he entered a plea of guilty (Resp. Exh. A, 310). His attorney, however, testified as follows:

A: I told them and I told their mother that statistics that I have seen that are prepared by the Missouri Department of Corrections indicate that the average spent under a life sentence, which is less than thirty-five years, is ten years. However, that's predicated upon that prisoner being an excellent prisoner and it's predicated upon his conduct in the penitentiary.

Q: Was the seven year time ever mentioned, or do you recall?

A: [Mr. Marks] Well, Mr. Schmidt, I advised both of these men that under Missouri law, that the minute that somebody goes to Jefferson City that they are eligible for probation, and that every year that they can file an application for probation and every year they have the right to be heard and that is all.

(Resp. Exh. A, 471–472). The Circuit Court found that "no one promised [the petitioner] he would only serve seven years on whatever sentence he was to receive" (Resp. Exh. A, 522). As the Missouri Court of Appeals correctly ruled, the decision of the trial court to rule the issue of credibility against the plaintiff was not erroneous. 535 S.W.2d at 300. Petitioner has failed to indicate any substantial reason why the finding of the Rule 27.26 hearing court should not be presumed to be correct. 28 U.S.C. § 2254(d).

During his Rule 27.26 hearing petitioner also testified that his attorney related a threat made by the trial judge that he would assess four consecutive life sentences against petitioner if he went to trial and was found guilty (Resp. Exh. A, 309).

During the Rule 27.26 hearing the sentencing judge testified that during the plea bargaining that preceded the guilty pleas, he indicated to both the state prosecutor and the defense attorney that "in the event that the jury found them guilty of the charges for which they were on trial and because of what I consider the seriousness of the charges, I would feel inclined to run the sentences all consecutively" (Resp. Exh. A, 344). The Rule 27.26 hearing court found that Judge Bloom did indicate to the defendant's attorney that in the event the defendant was found guilty, whatever sentences the defendant received from the jury would probably be made consecutive (Resp. Exh. A, 523). The Missouri Court of Appeals treated the issue thus:

the judge did not tell counsel that the defendants in that case would get four consecutive life sentences. He did say that the jury would assess the punishment and that he would run the sentences consecutively. This of course was based upon the version of the facts as presented to him by the attorneys for the parties. The attorney for movant advised him that under the charges he was facing he could receive four consecutive life sentences. The testimony of his attorney was corroborated by movant's mother, who testified on behalf of her sons. She stated that when she was with Charles their attorney told them that "it was a possibility that they could get four life sentences." Within the perimeter of the issue raised here we cannot say that the court erred.

535 S.W.2d at 299. As this Court stated in its Memorandum Opinion in the companion case, 426 F.Supp. 1195, brought by Kevin Dean, petitioner's attorney was merely per-

forming his duty in advising his client of the statements made by the trial court during the plea bargaining discussions. Neither the judge nor the attorney threatened petitioner to induce a guilty plea. This Court stated in the other case, 426 F.Supp. at 1199:

> We see no impropriety in the fact that Judge Bloom informed counsel of his purpose to run whatever terms of imprisonment which might be assessed consecutively in the event of a conviction. As he stated in the Rule 27.26 hearing, it was his belief that counsel "had a right to know that." Surely, such information would be of value to an attorney in assessing the situation for the purpose of advising his client.

In his traverse to the response petitioner argues that there exists no evidence in the record which disproves his assertion that during the plea hearing he believed that he was threatened by the consecutive sentence statement of the trial court, regardless of the trial court's intention not to threaten petitioner. It was, of course, for the sentencing judge and the Rule 27.26 hearing judge to determine the psychological status of petitioner's mind at the time he was pleading guilty, i. e., whether or not the plea was involuntary because petitioner believed that he was being threatened. *Griffith v. Wyrick,* 527 F.2d 109 (8th Cir. 1975), cited by petitioner, is not to the contrary.

In *Griffith* during the guilty plea hearing the defendant affirmatively placed on the record a statement denying his earlier admission of guilt, indicating he had been physically assaulted as an inducement to plead guilty and promised by his attorney that he was going to receive a sentence of five years imprisonment for pleading guilty. The Court of Appeals stated that the respondent did not carry his burden of proof, when faced with this evidence. In the case at hand no such record exists. The instant

record of the guilty plea is unequivocal and the claims made by the petitioner were refuted by the record of the guilty plea and by the record of the Rule 27.26 hearing. As stated above, with respect to the voluntariness of petitioner's plea of guilty, the petitioner's subjective state of mind was for the trial court and the Rule 27.26 hearing court to determine. *Reed v. Turner,* 444 F.2d 206, 208 (10th Cir. 1971).

### Claim No. 3

Petitioner alleges that he did not understand the nature of the charges because of ineffective assistance of counsel. For the reasons set out above regarding Claim No. 1, the Court finds ample evidence in the record to indicate that the petitioner knew and understood the nature of the charges against him. He did not receive ineffective assistance of counsel. *See* 535 S.W.2d at 299.

### Claim No. 4

Finally, petitioner alleges that his right to trial by jury was unlawfully "chilled." This Court is in complete agreement with the ruling of the Missouri Court of Appeals that "[t]his point presents nothing for our review." 535 S.W.2d at 300. The claim is not cast in a specific factual context, and the nature of the legal premise relied upon is not clear. To the extent petitioner refers to the effect of § 546.480, R.S.Mo., with respect to the prospect of consecutive [2] sentences after a jury trial conviction (*see* Resp. Exh. B, 26), *State of Missouri v. Neal,* 514 S.W.2d 544 (Mo.1974), this Court stated in the *Dean* case

> It is obvious to us that neither counsel nor the judge had Section 546.480 in mind during their discussions. Otherwise, there would have been no reason for counsel to have sought to ascertain the judge's feelings on whether he would make concurrent or consecutive the pun-

---

**2.** § 546.480, R.S.Mo., provides:

When any person shall be convicted of two or more offenses, before sentence shall have been pronounced upon him for either offense, the imprisonment to which he shall be sentenced upon the second or other subsequent conviction shall commence at the termination of the term of imprisonment to which he shall be adjudged upon prior conviction.

**1210**

ishment which might be assessed by a jury, nor for the judge to have stated that in the event of a jury conviction he "would feel inclined [because of what he considered the seriousness of the charges] to run the sentences all consecutively." Clearly, the judge was speaking of the exercise of judicial *discretion,* whereas the statute would not have permitted the exercise of such discretion.

\* \* \* \* \* \*

In addition, there is not a scintilla of evidence in the record that the mandatory provisions of Section 546.480, even as affecting the multi-count indictment, had *any* bearing whatever on petitioner's decision to plead guilty instead of standing trial. He did not so testify, nor did he even indicate he was aware thereof.

These observations fully apply to the record of this case as well as to the *Dean* case.

■ Also before the Court is petitioner's application for an evidentiary hearing. One premise given is the involvement of the Rule 27.26 hearing judge, the Honorable Daniel T. Tillman, in a civil rights action brought by petitioner in this Court, No. 74–477 C (3). *See Bonner v. Circuit Court,* 526 F.2d 1331 (8th Cir. 1975), *cert. denied,* 424 U.S. 946, 96 S.Ct. 1418, 47 L.Ed.2d 353 (1976), *reh. denied,* 425 U.S. 926, 96 S.Ct. 1525, 47 L.Ed.2d 773 (1976). This Court notes no objection voiced by petitioner in the Rule 27.26 hearing to Judge Tillman presiding over that hearing. Furthermore, no indication of bias of any sort appears in the record.

After thoroughly examining the premises of this action and the state court records, it is the opinion of the Court that no further evidentiary hearing is required by *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). For the reasons set out above, the claims asserted by petitioner are without merit and the action will be dismissed.